FILED
2014 MAY -9 PM 1:49

**IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO
CIVIL DIVISION**

2014 05 1251

HOLLY JO REIFENBERGER
6 PATOMAC COURT
LOVELAND, OH 45140

       **Plaintiff,**

**v.**

**ABUBAKAR ATIQ DURRANI, M.D.**
PAKISTAN
(Serve via Hague Convention)

And

**CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC.**
(Serve via Hague Convention)

And

**WEST CHESTER HOSPITAL, LLC**
7700 UNIVERSITY DRIVE
WEST CHESTER, OH 45069

SERVE: GH&R BUSINESS SVCS., INC.
511 WALNUT STREET
1900 FIFTH THIRD CENTER
CINCINNATI, OH 45202
(Serve via Certified mail)

**UC HEALTH**
SERVE: GH&R BUSINESS SVCS., INC.
511 WALNUT STREET
1900 FIFTH THIRD CENTER
CINCINNATI, OH 45202
(Serve via Certified mail)

Case No.

Judge: Guckenberger

**COMPLAINT
& JURY DEMAND**

1

EXHIBIT A

And                                    :
                                       :
**JOURNEY LITE OF CINCINNATI, LLC**:
10475 READING RD., SUITE 115           :
CINCINNATI, OH 45241                   :
                                       :
Serve: CT CORPORATION                  :
1300 EAST 9TH STREET         :
CLEVELAND, OH 44114                     :
(Serve via Certified Mail)             :
                                       :
            **Defendants.**            :
                                       :

2014 05 1251

---

Comes now Plaintiff, Holly Jo Reifenberger, and files this Complaint and Jury

Demand, stating as follows:

## FACTUAL ALLEGATIONS OF PLAINTIFF

1. At all times relevant, Holly Jo Reifenberger ("Plaintiff" or "Ms. Reifenberger") was a
   resident of and domiciled in the State of Ohio.

2. At all times relevant, Defendant Dr. Abubakar Atiq Durrani ("Dr. Durrani") was
   licensed to and did in fact practice medicine in the State of Ohio.

3. At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST") was
   licensed to and did in fact perform medical services in the state of Ohio, and was and
   is a corporation authorized to transact business in the state of Ohio.

4. At all times relevant, West Chester Hospital, LLC ("West Chester Hospital") was a
   limited liability company authorized to transact business and perform medical
   services in the State of Ohio and operating under the trade name West Chester
   Hospital.

5. At all times relevant, Defendant UC Health Inc., was a duly licensed corporation
   which included, owned, operated and/or managed multiple hospitals including, but

not limited to West Chester Hospital, and which shared certain services, profits, and liabilities of hospitals including West Chester.

6. At all times relevant herein, West Chester Medical Center, Inc., aka West Chester Hospital held itself out to the public, and specifically to Plaintiff, as a hospital providing competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

7. At all times relevant, Journey Lite, LLC ("Journey Lite") was a limited liability company authorized to transact business and perform medical services in the state of Ohio.

8. At all times relevant, Journey Lite held itself out to the public, and specifically to Plaintiffs, as a hospital providing competent and qualified medical nursing services, care, and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

9. The subject matter of the Complaint arises out of medical treatment by the Defendants in Butler County, Ohio. This Court is thus the proper venue to grant Plaintiff the relief she seeks.

10. Ms. Reifenberger was suffering with severe neuropathy in her left leg, lower back pain, and stiff neck pain.

11. Ms. Reifenberger saw a T.V. commercial for Dr. Durrani and made an appointment to visit him.

12. Ms. Reifenberger first visited with Dr. Durrani at CAST.

13. During her first appointment with Dr. Durrani, Dr. Durrani examined an MRI Ms.

Reifenberger had taken at Bethesda North.

14. Dr. Durrani told Ms. Reifenberger that she would need surgery right away, and would eventually need a second surgery.

15. In or around May 2012, Dr. Durrani performed a C5-C6 cervical fusion on Ms. Reifenberger at West Chester Hospital.

16. Upon information and belief, during this surgery, Dr. Durrani used Infuse/BMP-2 and/or Puregen, without Ms. Reifenberger's knowledge or consent, causing Ms. Reifenberger harm.

17. Following the surgery, Ms. Reifenberger still experienced neck pain, was not able to turn her neck all of the way, had difficulty swallowing, had a constant cough and had to clear her throat, experienced back pain, and experienced a loss of flexibility.

18. Further following the surgery, Ms. Reifenberger followed up with Dr. Durrani at CAST.

19. Dr. Durrani told Ms. Reifenberger she needed to undergo back surgery.

20. Dr. Durrani further told Ms. Reifenberger that her neck pain should be resolved.

21. Ms. Reifenberger experienced an infection in the scar on her neck.

22. Dr. Durrani treated the infection in the scar by draining it two to three times.

23. Dr. Durrani performed an L4-5 Fusion and Laminectomy on Ms. Reifenberger at Journey Lite.

24. Upon information and belief, during this surgery, Dr. Durrani used Infuse/BMP-2 and/or Puregen, without Ms. Reifenberger's knowledge or consent, causing Ms. Reifenberger harm.

25. Following this surgery, Ms. Reifenberger followed up with Dr. Durrani at CAST until

the day of Dr. Durrani's arrest.

26. Ms. Reifenberger now experiences constant pain.

2014  05  1251

27. Ms. Reifenberger experiences pain when she looks side to side.

28. Ms. Reifenberger is unable to sit for long periods of time and has difficult bending.

29. Ms. Reifenberger further has difficulty performing daily household chores.

30. Ms. Reifenberger now treats with Dr. Michael Danko at Advanced Spine for pain

   management, and her primary care physician, Dr. Michael Trombly.

31. Upon information and belief, the surgeries performed by Dr. Durrani were medically

   unnecessary and/or improperly performed.

32. As a direct and proximate result of Dr. Durrani's negligence and the Defendants

   Negligence Ms. Reifenberger has suffered harm

33. Ms. Reifenberger did not become aware of Dr. Durrani's use of Infuse/BMP-2 or

   PureGen until she contacted her undersigned counsel.

## INFUSE/BMP-2

34.    Dr. Durrani oftentimes used BMP-2 "off-label" when performing surgeries.

35.    BMP-2 is manufactured, marketed, sold and distributed by Defendant Medtronic
under the trade name "Infuse."

36.    Dr. Durrani is a consultant for Medtronic.

37.    Defendants did not inform Plaintiff of Durrani's financial interest, conflicts of
interest or consulting arrangement with Medtronic.

38.    Medtronic, provided in writing to Dr. Durrani and CAST the approved uses for
BMP-2, the substance also referred to as Infuse, which is a bone morphogenic protein,
used as an artificial substitute for bone grafting in spine surgeries.

39.     BMP-2 is not approved by the Food and Drug Administration for use in the cervical and thoracic spine.

40.     BMP-2 is neither safe nor approved for use on children less than twenty one (21) years of age.

41.     For use in spinal surgery, BMP-2/Infuse is approved by the FDA for a limited procedure, performed on a limited area of the spine, using specific components. Specifically, the FDA approved Infuse for one procedure of the spine: Anterior Lumbar Interbody Fusion ("ALIF" or "Anterior" approach); and only in one area of the spine: L4 to S1; and only when used in conjunction with FDA-Approved Components: LT-CAGE Lumbar Tapered Fusion Device Component ("LT-CAGE")

42.     Use of Infuse in cervical or thoracic surgery, or use through the back (posterior), or side (lateral), or on areas of the spine outside of the L4-S1 region (e.g., the cervical spine), or using components other than or in addition to the LT-CAGE is not approved by the FDA, and thus such procedures and/or use of non-FDA approved componentry is termed "off-label."

43.     When used off-label, Infuse frequently causes excessive or uncontrolled (also referred to as "ectopic" or "exuberant") bone growth on or around the spinal cord. When nerves are compressed by such excessive bone growth, a patient can experience, among other adverse events, intractable pain, paralysis, spasms, and cramps in limbs.

44.     The product packaging for BMP-2/Infuse indicates it causes an increased risk of cancer four (4) times greater than other bone graft alternatives.

45.     Dr. Durrani, CAST staff and employees, West Chester Hospital Personnel, and Journey Lite personnel did not disclose to Plaintiff their intent to use BMP-2/Infuse, and

6

further, did not disclose their intent to use BMP-2/Infuse in a way not approved by the FDA.

46.     Dr. Durrani used BMP-2 in Plaintiff in manners not approved by Medtronic or the FDA.

47.     Plaintiff was not informed by Defendants that Dr. Durrani used Infuse/BMP-2 in her surgeries.

48.     Plaintiff would not have allowed BMP-2 to be used by Dr. Durrani in her surgeries in a manner that was not approved by the FDA or Medtronic, Infuse/BMP-2's manufacturer.

49.     Plaintiff would not have consented to the use of BMP-2 in her body if informed of the risks by Dr. Durrani, CAST staff and employees, West Chester Hospital Personnel, or any Journey Lite Personnel.

50.     The written informed consent of Dr. Durrani, CAST, West Chester Hospital, and Journey Lite, signed by Plaintiff lacked the disclosure of Infuse/BMP-2's use in her procedures.

51.     Plaintiff never received a verbal disclosure of Infuse/BMP-2 from Dr. Durrani, CAST staff and employees, West Chester Hospital Personnel, or any Journey Lite Personnel.

52.     Medtronic specifically required Infuse/BMP-2 only be used in "skeletally mature patients" with degenerative disc disease.

53.     Medtronic required at least six (6) months of non-operative treatment prior to use of Infuse/BMP-2.

54.     Dr. Durrani regularly used Infuse/BMP-2 without this six (6) month non-operative treatment.

55.     Medtronic required BMP-2 always be used in conjunction with a metal LT cage.

56.     Dr. Durrani regularly used BMP-2 without a proper LT cage in her surgery.

## PUREGEN

57.     Dr. Durrani oftentimes used Puregen when performing surgeries.

58.     Puregen is a product produced by Alphatec Spine.

59.     Dr. Durrani was and is a paid consultant for Alphatec Spine.

60.     Dr. Durrani has an ownership stake in the Alphatec Spine.

61.     Puregen has never been approved by the FDA for any human use.

62.     Puregen is now removed from the market for any use.

63.     Dr. Durrani used the product Puregen as bone graft substitute similar to Infuse/BMP-2 during spinal surgeries.

64.     Dr. Durrani, CAST staff and employees, West Chester Hospital personnel, and Journey Lite personnel did not disclose their intent to use Puregen, nor did they inform Plaintiff that it was a product that was not approved by the FDA for human use.

65.     Dr. Durrani used Puregen in Plaintiff in manners not approved by the FDA.

66.     Plaintiff was not informed by Dr. Durrani, CAST staff and employees, West Chester Personnel, or any Journey Lite personnel that Dr. Durrani used Puregen in Plaintiff's surgeries.

67.     Plaintiff would not have allowed Puregen to be used by Dr. Durrani in her surgeries in a manner that was not approved by the FDA.

68.    Plaintiff would not have consented to the use of Puregen in her body if informed of the risks by Dr. Durrani, CAST staff and employees, West Chester Hospital personnel, or any Journey Lite personnel..

69.    The written informed consent of Dr. Durrani and CAST signed by Plaintiff lacked the disclosure of Puregen's use in her proceduress.

70.    Plaintiff never received a verbal disclosure of Puregen from Dr. Durrani, CAST staff and employees, or any Christ Hospital Personnel.

## DR. DURRANI COUNTS:

## COUNT I: NEGLIGENCE

71. Defendant Dr. Durrani owed his patient, Plaintiff, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

72. Defendant Dr. Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgeries, and improper follow-up care addressing a patient's concerns.

73. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant Dr. Durrani, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT II: BATTERY

74. Dr. Durrani committed battery against Plaintiff by performing surgeries that were unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent, inter alia, by using Infuse/BMP-2, PureGen and/or Baxano in ways and for surgeries not approved by the FDA and medical community, and by the failure to provide this information to Plaintiff.

75. Plaintiff would not have agreed to the surgeries if she knew the surgeries were unnecessary, not approved by the FDA, and not indicated.

76. As a direct and proximate result of the aforementioned battery by Dr. Durrani, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT III: LACK OF INFORMED CONSENT

77. The informed consent forms from Dr. Durrani and CAST, which they required Plaintiff to sign, failed to fully cover all the information necessary and required for the procedures and surgical procedures performed by Dr. Durrani. Dr. Durrani and CAST each required an informed consent release.

78. In addition, no one verbally informed Plaintiff of the information and risks required for informed consent at the time of or before the Plaintiff's surgeries.

79. Dr. Durrani failed to inform Plaintiff of material risks and dangers inherent or potentially involved with her surgeries and procedures.

80. Plaintiff subsequently developed severe and grievous injuries as a direct and proximate result of lack of informed consent.

81. Had Plaintiff been appropriately informed of the need or lack of need for surgeries and other procedures and the risks of the procedures, Plaintiff would not have undergone the surgeries or procedures.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82. Dr. Durrani's conduct as described above was intentional and reckless.

83. It is outrageous and offends against the generally accepted standards of morality.

84. It was the proximate and actual cause of Plaintiff's psychological injuries, emotional injuries, mental anguish, suffering, and distress.

85. Plaintiff suffered severe distress and anguish so serious and of a nature that no reasonable man or woman would be expected to endure.

## COUNT V: FRAUD

86. Dr. Durrani made material, false representations to Plaintiff and her insurance company related to Plaintiff's treatment including: stating the surgeries were necessary, that Dr. Durrani "could fix" Plaintiff, that more conservative treatment was unnecessary and futile, that the surgery would be simple or was "no big deal", that Plaintiff would be walking normally within days after each surgery, that the procedures were medically necessary and accurately reported on the billing to the insurance company, that the surgeries were successful, and that Plaintiff was medically stable and ready to be discharged.

87. Dr. Durrani also concealed the potential use of Infuse/BMP-2 and/or Puregen in Plaintiff's surgeries when he had a duty to disclose to Plaintiff his planned use of the same.

88. These misrepresentations and/or concealments were material to Plaintiff because they directly induced the Plaintiff to undergo her surgeries.

89. Dr. Durrani knew or should have known such representations were false, and/or made the misrepresentations with utter disregard and recklessness as to their truth that knowledge of their falsity may be inferred.

90. Dr. Durrani made the misrepresentations before, during, and after the surgeries, with the intent of misleading Plaintiff and her insurance company into relying upon them. Specifically, the misrepresentations were made to induce payment by the insurance company, without which Dr. Durrani would not have performed the surgery, and to induce Plaintiff to undergo the surgeries without regard to medical necessity and only for the purpose of receiving payment.

91. The misrepresentations and/or concealments were made during the Plaintiff's office visits at Dr. Durrani's CAST offices and/or at West Chester Hospital and/or at Journey Lite.

92. Plaintiff was justified in her reliance on the misrepresentations because a patient has a right to trust their doctor and that the facility is overseeing the doctor to ensure the patients of that doctor can trust the facility.

93. As a direct and proximate result of the aforementioned fraud, Plaintiff did undergo surgery, which was paid for in whole or in part by her insurance company, and suffered all damages requested in the prayer for relief.

## COUNT VI: SPOLIATION OF EVIDENCE

94. Dr. Durrani willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, emails, paperwork and related evidence.

95. Dr. Durrani spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

96. Dr. Durrani's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## CAST COUNTS:

## COUNT I: VICARIOUS LIABILITY

97. At all times relevant, Defendant Dr. Durrani was an agent, and/or employee of CAST.

98. Dr. Durrani is in fact, the owner of CAST.

99. Defendant Dr. Durrani was performing within the scope of his employment with CAST during the care and treatment of Plaintiff.

100. Defendant CAST is responsible for harm caused by acts of its employees for conduct that was within the scope of employment under the theory of respondeat superior.

101. Defendant CAST is vicariously liable for the acts of Defendant Dr. Durrani alleged in this Complaint including all of the counts asserted against Dr. Durrani directly.

102. As a direct and proximate result of Defendant CAST's acts and omissions, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT II: NEGLIGENT HIRING, RETENTION & SUPERVISION

103. CAST provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

104. CAST and Dr. Durrani participated in experiments using Infuse/BMP-2 and/or Puregen bone graft on patients, including Plaintiff, without obtaining proper informed consent thereby causing harm to Plaintiff.

105. CAST breached its duty to Plaintiff, inter alia, by not supervising or controlling the actions of Dr. Durrani and the doctors, nurses, staff, and those with privileges, during the medical treatment of Plaintiff at CAST.

106. The Safe Medical Device Act required entities such as CAST to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

107. Such disregard for and violations of federal law represents strong evidence that CAST negligently hired, retained and supervised Dr. Durrani.

108. As a direct and proximate result of the acts and omissions herein described, including but not limited to failure to properly supervise medical treatment by Dr. Durrani, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT III: FRAUD

109. CAST sent out billing to Plaintiff at her home following her surgeries at West Chester Hospital and Journey Lite.

110. The exact dates these medical bills were sent out are reflected in those medical bills.

14

111.    These bills constituted affirmative representations by CAST that the charges related to Plaintiff's surgery were medically appropriate and properly documented.

112.    The bills were sent with the knowledge of CAST that in fact Plaintiff's surgeries were not appropriately billed and documented and that the services rendered at West Chester Hospital and Journey Lite associated with Dr. Durrani were not appropriate.

113.    The bills sent by CAST to Plaintiff falsely represented that Plaintiff's surgeries were appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

114.    Plaintiff relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiff for CAST's services in association with Dr. Durrani's surgery.

115.    As a direct and proximate result of this reliance on the billing of CAST, Plaintiff incurred medical bills that she otherwise would not have incurred.

116.    CAST also either concealed from Plaintiff that Infuse/BMP-2 or Puregen would be used in Plaintiff's surgeries, or misrepresented to Plaintiff the nature of the surgeries, and the particular risks that were involved therein.

117.    CAST's concealments and misrepresentations regarding Infuse/BMP-2 or Puregen and the nature and risks of Plaintiff's surgeries were material facts.

118.    Because of its superior position and professional role as a medical service provider, CAST had a duty to disclose these material facts to Plaintiff and a duty to refrain from misrepresenting such material facts to Plaintiff.

119.    CAST intentionally concealed and/or misrepresented said material facts with the

intent to defraud Plaintiff in order to induce Plaintiff to undergo the surgeries, and

thereby profited from the surgeries and procedures Dr. Durrani performed on Plaintiff

at West Chester Hospital and Journey Lite.

120.    Plaintiff was unaware that Infuse/BMP-2 or Puregen would be used in Plaintiff's

surgeries and therefore, was unaware of the health risks of Infuse/BMP-2 or

Puregen's use in Plaintiff's spine.

121.    Had Plaintiff known before Plaintiff's surgeries that Infuse/BMP-2 or Puregen

would be used in Plaintiff's spine and informed of the specific, harmful risks flowing

therefrom, Plaintiff would not have undergone the surgeries with Dr. Durrani at West

Chester Hospital and Journey Lite.

122.    As a direct and proximate result of CAST's concealments and/or

misrepresentations regarding Infuse/BMP-2 or Puregen, and the nature of the

surgeries performed by Dr. Durrani at Christ Hospital, Plaintiff sustained, inter alia,

economic, and non-economic (including physical, emotional) damages.

### COUNT IV: OHIO CONSUMER SALES PROTECTION ACT

123.    Although the Ohio Consumer Sales Protection statutes O.R.C 1345.01 et seq.

exempts physicians, a transaction between a hospital and a patient/consumer is not

clearly exempted.

124.    CAST's services rendered to Plaintiff constitute a "consumer transaction" as

defined in ORC Section 1345.01(A).

125.    CAST omitted suppressed and concealed from Plaintiff facts with the intent that

Plaintiff rely on these omissions, suppressions and concealments as set forth herein.

126.    CAST's misrepresentations, and its omissions, suppressions and concealments of

fact, as described above, constituted unfair, deceptive and unconscionable acts and

practices in violation of O.R.C 1345.02 and 1345.03 and to Substantive Rules and

case law.

127.    CAST was fully aware of its actions.

128.    CAST was fully aware that Plaintiff was induced by and relied upon CAST's

representations at the time CAST was engaged by Plaintiff.

129.    Had Plaintiff been aware that CAST's representations as set forth above were

untrue, Plaintiff would not have used the services of Defendants.

130.    CAST, through its agency and employees knowingly committed the unfair,

deceptive and/or unconscionable acts and practices described above.

131.    CAST's actions were not the result of any bona fide errors.

132.    As a result of CAST's unfair, deceptive and unconscionable acts and practices,

Plaintiff has suffered and continues to suffer damages, which include, but are not

limited to the following:

      a.    Loss of money paid

      b.    Severe aggravation and inconveniences

      c.    Under O.R.C. 1345.01 Plaintiff is entitled to:

            i.    An order requiring CAST restore to Plaintiff all money received

from Plaintiff plus three times actual damages and/or

actual/statutory damages for each violation;

           ii.    All incidental and consequential damages incurred by Plaintiff;

    a.  Violating their bylaws and JCAHO rules by allowing Dr. Durrani to repeatedly violate the West Chester Hospital/UC Health bylaws with it's full knowledge of the same;

    b.  Failing to adequately review, look into, and otherwise investigate Dr. Durrani's educational background, work history and peer reviews when he applied for and reapplied for privileges at West Chester Hospital;

    c.  Ignoring complaints about Dr. Durrani's treatment of patients reported to it by West Chester Hospital staff, doctors, Dr. Durrani's patients and by others;

    d.  Ignoring information they knew or should have known pertaining to Dr. Durrani's previous privileged time at other Cincinnati area hospitals, including Children's Hospital, Deaconess Hospital, University Hospital, Good Samaritan Hospital, and Christ Hospital.

143.    The Safe Medical Device Act required entities such as West Chester Hospital/UC Health to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

144.    As a direct and proximate result of the negligent credentialing, supervision, and retention of Dr. Durrani, Plaintiff sustained severe all damages requested in the prayer for relief.

### COUNT III: FRAUD

145.    West Chester Hospital/UC Health sent out billing to Plaintiff at her home following her surgery at West Chester Hospital.

146.    The exact dates these medical bills were sent out are reflected in those medical bills.

147. These bills constituted affirmative representations by West Chester Hospital/UC Health that the charges related to Plaintiff's surgery were medically appropriate and properly documented.

148. The bills were sent with the knowledge of West Chester Hospital/UC Health that in fact Plaintiff's surgery was not appropriately billed and documented and that the services rendered at West Chester Hospital/UC Health associated with Dr. Durrani were not appropriate.

149. The bills sent by West Chester Hospital/UC Health to Plaintiff falsely represented that Plaintiff's surgery was appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

150. Plaintiff relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiff for West Chester Hospital/UC Health's services in association with Dr. Durrani's surgeries.

151. As a direct and proximate result of this reliance on the billing of West Chester Hospital/UC Health, Plaintiff incurred medical bills that she otherwise would not have incurred.

152. West Chester Hospital/UC Health also either concealed from Plaintiff facts they knew about Dr. Durrani, including that Infuse/BMP-2 or Puregen would be used in Plaintiff's surgert, or misrepresented to Plaintiff the nature of the surgery, and the particular risks that were involved therein.

21

153. West Chester Hospital/UC Health's concealments and misrepresentations regarding Infuse/BMP-2 or Puregen and the nature and risks of Plaintiff's surgery were material facts.

154. Because of its superior position and professional role as a medical service provider, West Chester Hospital/UC Health had a duty to disclose these material facts to Plaintiff and a duty to refrain from misrepresenting such material facts to Plaintiff.

155. West Chester Hospital/UC Health intentionally concealed and/or misrepresented said material facts with the intent to defraud Plaintiff in order to induce Plaintiff to undergo the surgery, and thereby profited from the surgeries and procedures Dr. Durrani performed on Plaintiff at West Chester Hospital/UC Health.

156. Plaintiff was unaware that Infuse/BMP-2 or Puregen would be used in Plaintiff's surgery and therefore, was unaware of the health risks of Infuse/BMP-2 or Puregen's use in Plaintiff's spine.

157. Had Plaintiff known before Plaintiff's surgery that Infuse/BMP-2 or Puregen would be used in Plaintiff's spine and informed of the specific, harmful risks flowing therefrom, Plaintiff would not have undergone the surgeries with Dr. Durrani at West Chester Hospital/UC Health.

158. As a direct and proximate result of the fraud upon Plaintiff by West Chester Hospital/UC Health, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT IV: PRODUCTS LIABILITY

159. At all times Infuse/BMP-2 and Puregen are and were products as defined in R.C. § 2307.71(A)(12) and applicable law.

160.    West Chester Hospital/UC Health (aka supplier) supplied either Medtronic's (aka manufacturer) Infuse/BMP-2 for surgery performed by Dr. Durrani on Plaintiff.

161.    West Chester Hospital/UC Health, as a supplier, failed to maintain Infuse/BMP-2 properly.

162.    West Chester Hospital/UC Health did not adequately supply all components required to use either Infuse/BMP-2 properly.

163.    West Chester Hospital/UC Health knew or should have known the FDA requirements and Medtronic's requirements for using either Infuse/BMP-2.

164.    West Chester Hospital/UC Health stored either Infuse/BMP-2 at its facility.

165.    West Chester Hospital/UC Health ordered either Infuse/BMP-2 for surgery performed by Durrani.

166.    West Chester Hospital/UC Health did not adequately warn Plaintiff that Infuse/BMP-2 would be used without all FDA and manufacturer required components.

167.    West Chester Hospital/UC Health did not gain informed consent from Plaintiff for the use of Infuse/BMP-2, let alone warn of the supplying of the product without FDA and manufacturer requirements.

168.    West Chester Hospital/UC Health failed to supply either Infuse/BMP-2 (aka product) in the manner in which it was represented.

169.    West Chester Hospital/UC Health failed to provide any warning or instruction in regard to Infuse/BMP-2, and failed to make sure any other party gave such warning or instruction.

170.    Plaintiffs suffered physical, financial, and emotional harm due to West Chester Hospital/UC Health's violation of the Ohio Products Liability act. Plaintiff's injuries were a foreseeable risk.

171.    Plaintiff did not alter, modify or change the product, nor did Plaintiff know that the product was being implanted without all required components.

172.    West Chester Hospital/UC Health knew or should have known that the product was extremely dangerous and should have exercised care to provide a warning that the product was being used and that the product was being used outside FDA and manufacturer requirements. The harm caused to Plaintiff by not providing an adequate warning was foreseeable.

173.    West Chester Hospital/UC Health knew that the product did not conform to the representation of the intended use by the manufacturer yet permitted the product to be implanted into Plaintiff.

174.    West Chester Hospital/UC Health, as a supplier, acted in an unconscionable manner in failing to supply the product without all FDA and manufacturer required components.

175.    West Chester Hospital/UC Health, as a supplier, acted in an unconscionable manner in failing to warn Plaintiff that the product was being supplied without all FDA and manufacturer required components.

176.    West Chester Hospital/UC Health 's actions demonstrate they took advantage of the Plaintiff's inability, due to ignorance of the product, to understand the product being implanted without FDA and manufacturer required components.

177. West Chester Hospital/UC Health substantially benefited financially by the use of the product as the product allowed for Defendant to charge more for the surgery.

178. Plaintiff suffered economic loss as defined in R.C. § 2303.71(A)(2) and applicable law.

179. Plaintiff suffered mental and physical harm due to West Chester Hospital/UC Health's acts and omissions.

180. Plaintiff suffered emotional distress due to acts and omissions of West Chester Hospital/UC Health and are entitled to recovery as defined in R.C, § 2307.71(A)(7) and applicable law.

181. West Chester Hospital/UC Health violated the Ohio Products Liability Act R.C. § 2307.71-2307.80.

182. West Chester Hospital/UC Health violated R.C. § 2307.71(A)(6).

183. West Chester Hospital/UC Health violated The Ohio Consumer Sales Practices Act R.C. § 1345.02-.03.

184. West Chester Hospital/UC Health provided inadequate warnings are defined in R.C, § 2307.76(A) and applicable law.

## COUNT V: OHIO CONSUMER SALES PROTECTION ACT

185. Although the Ohio Consumer Sales Protection statutes O.R.C 1345.01 et seq. exempts physicians, however, a transaction between a hospital and a patient/consumer is not clearly exempted.

186. West Chester Hospital/UC Health's services rendered to Plaintiff constitute a "consumer transaction" as defined in ORC Section 1345.01(A).

187. West Chester Hospital/UC Health omitted suppressed and concealed from Plaintiffs facts with the intent that Plaintiffs rely on these omissions, suppressions and concealments as set forth herein.

188. West Chester Hospital/UC Health's misrepresentations, and its omissions, suppressions and concealments of fact, as described above, constituted unfair, deceptive and unconscionable acts and practices in violation of O.R.C 1345.02 and 1345.03 and to Substantive Rules and case law.

189. West Chester Hospital/UC Health was fully aware of its actions.

190. West Chester Hospital/UC Health was fully aware that Plaintiff was induced by and relied upon West Chester Hospital/UC Health's representations at the time West Chester Hospital/UC Health was engaged by Plaintiff.

191. Had Plaintiff been aware that West Chester Hospital/UC Health's representations as set forth above were untrue, Plaintiff would not have used the services of Defendants.

192. West Chester Hospital/UC Health, through its agency and employees knowingly committed the unfair, deceptive and/or unconscionable acts and practices described above.

193. West Chester Hospital/UC Health 's actions were not the result of any bona fide errors.

194. As a result of West Chester Hospital/UC Health's unfair, deceptive and unconscionable acts and practices, Plaintiff has suffered and continues to suffer damages, which include, but are not limited to the following:

d. Loss of money paid

    e.   Severe aggravation and inconveniences

    f.   Under O.R.C. 1345.01 Plaintiff is entitled to:

          i.   An order requiring West Chester Hospital/UC Health restore to Plaintiff all money received from Plaintiff plus three times actual damages and/or actual/statutory damages for each violation;

          ii.   All incidental and consequential damages incurred by Plaintiff;

          iii.   All reasonable attorneys' fees, witness fees, court costs and other fees incurred;

          iv.   Such other and further relief that this Court deems just and appropriate.

## COUNT VI: SPOLIATION OF EVIDENCE

195.    West Chester Hospital/UC Health through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, emails, paperwork and related evidence.

196.    West Chester Hospital/UC Health through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

197.    West Chester Hospital/UC Health's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## JOURNEY LITE:

## COUNT I: NEGLIGENCE

198.    Journey Lite owed its patient, Plaintiff, through its agents and employees the duty

to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

199. Journey Lite, acting through its agents and employees breached its duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgery, improper assistance during Plaintiff's surgery and improper follow up care addressing a patient's concerns.

200. The agents and employees who deviated from the standard of care include nurses, physician assistants, residents and other hospital personnel who participated in Plaintiff's surgery.

201. The management, employees, nurses, technicians, agents and all staff during the scope of their employment and/or agency of Journey Lite's knowledge and approval, either knew or should have known the surgery was not medically necessary based upon Dr. Durrani's known practices; the pre-op radiology; the pre-op evaluation and assessment; and the violation of their responsibility under the bylaws, rules, regulations and policies of Journey Lite.

202. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care by the agents and employees of Journey Lite, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT II: NEGLIGENT CREDENTIALING, SUPERVISION, & RETENTION

203.    As described in the Counts asserted directly against Dr. Durrani, the actions of Dr. Durrani with respect to Plaintiff constitute medical negligence, lack of informed consent, battery, and fraud.

204.    Journey Lite negligently credentialed, supervised, and retained Dr. Durrani as a credentialed physician by:

   a.   Violating their bylaws and JCAHO rules by allowing Dr. Durrani to repeatedly violate the Journey Lite bylaws with it's full knowledge of the same;

   b.   Failing to adequately review, look into, and otherwise investigate Dr. Durrani's educational background, work history and peer reviews when he applied for and reapplied for privileges at Journey Lite;

   c.   Ignoring complaints about Dr. Durrani's treatment of patients reported to it by Journey Lite staff, doctors, Dr. Durrani's patients and by others;

   d.   Ignoring information they knew or should have known pertaining to Dr. Durrani's previous privileged time at other Cincinnati area hospitals, including Children's Hospital, Deaconess Hospital, University Hospital, Good Samaritan Hospital, West Chester Hospital/UC Health, and Christ Hospital.

205.    The Safe Medical Device Act required entities such as Journey Lite to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

206.    As a direct and proximate result of the negligent credentialing, supervision, and retention of Dr. Durrani, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT III: FRAUD

207.    Journey Lite sent out billing to Plaintiff at her home following her surgery at Journey Lite.

208.    The exact dates these medical bills were sent out are reflected in those medical bills.

209.    These bills constituted affirmative representations by Journey Lite that the charges related to Plaintiff's surgery were medically appropriate and properly documented.

210.    The bills were sent with the knowledge of Journey Lite that in fact Plaintiff's surgery was not appropriately billed and documented and that the services rendered at Journey Lite associated with Dr. Durrani were not appropriate.

211.    The bills sent by Journey Lite to Plaintiff falsely represented that Plaintiff's surgery was appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

212.    Plaintiff relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiff for Journey Lite's services in association with Dr. Durrani's surgeries.

213. As a direct and proximate result of this reliance on the billing of Journey Lite, Plaintiff incurred medical bills that she otherwise would not have incurred.

214. Journey Lite also either concealed from Plaintiff that Infuse/BMP-2 or Puregen would be used in Plaintiff's surgery, or misrepresented to Plaintiff the nature of the surgery and the particular risks that were involved therein.

215. Journey Lite's concealments and misrepresentations regarding Infuse/BMP-2 or Puregen and the nature and risks of Plaintiff's surgery were material facts.

216. Because of its superior position and professional role as a medical service provider, Journey Lite had a duty to disclose these material facts to Plaintiff and a duty to refrain from misrepresenting such material facts to Plaintiff.

217. Journey Lite intentionally concealed and/or misrepresented said material facts with the intent to defraud Plaintiff in order to induce Plaintiff to undergo the surgery, and thereby profited from the surgery and procedure Dr. Durrani performed on Plaintiff at Journey Lite.

218. Plaintiff was unaware that Infuse/BMP-2 or Puregen would be used in Plaintiff's surgery and therefore, was unaware of the health risks of Infuse/BMP-2 or Puregen's use in Plaintiff's spine.

219. Had Plaintiff known before Plaintiff's surgery that Infuse/BMP-2 or Puregen would be used in Plaintiff's spine and informed of the specific, harmful risks flowing therefrom, Plaintiff would not have undergone the surgery with Dr. Durrani at Journey Lite.

220. As a direct and proximate result of the fraud upon Plaintiff by Journey Lite, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT IV: OHIO CONSUMER SALES PROTECTION ACT

221.    Although the Ohio Consumer Sales Protection statutes O.R.C 1345.01 et seq.
        exempts physicians, a transaction between a hospital and a patient/consumer is not
        clearly exempted.

222.    Journey Lite's services rendered to Plaintiff constitute a "consumer transaction"
        as defined in ORC Section 1345.01(A).

223.    Journey Lite omitted suppressed and concealed from Plaintiff facts with the intent
        that Plaintiff rely on these omissions, suppressions and concealments as set forth
        herein.

224.    Journey Lite's misrepresentations, and its omissions, suppressions and
        concealments of fact, as described above, constituted unfair, deceptive and
        unconscionable acts and practices in violation of O.R.C 1345.02 and 1345.03 and to
        Substantive Rules and case law.

225.    Journey Lite was fully aware of its actions.

226.    Journey Lite was fully aware that Plaintiff was induced by and relied upon
        Journey Lite's representations at the time Journey Lite was engaged by Plaintiff.

227.    Had Plaintiff been aware that Journey Lite's representations as set forth above
        were untrue, Plaintiff would not have used the services of Defendants.

228.    Journey Lite, through its agency and employees knowingly committed the unfair,
        deceptive and/or unconscionable acts and practices described above.

229.    Journey Lite's actions were not the result of any bona fide errors.

230.   As a result of Journey Lite's unfair, deceptive and unconscionable acts and practices, Plaintiff has suffered and continues to suffer damages, which include, but are not limited to the following:

g.   Loss of money paid

h.   Severe aggravation and inconveniences

i.   Under O.R.C. 1345.01 Plaintiffs are entitled to:

i.   An order requiring Journey Lite restore to Plaintiff all money received from Plaintiff plus three times actual damages and/or actual/statutory damages for each violation;

ii.   All incidental and consequential damages incurred by Plaintiff;

iii.   All reasonable attorneys' fees, witness fees, court costs and other fees incurred;

## COUNT V: PRODUCTS LIABILITY

231.   At all times Infuse/BMP-2 and Puregen are and were products as defined in R.C. § 2307.71(A)(12) and applicable law.

232.   Journey Lite (aka supplier) supplied either Medtronic's (aka manufacturer) Infuse/BMP-2 for surgery performed by Dr. Durrani on Plaintiff.

233.   Journey Lite, as a supplier, failed to maintain Infuse/BMP-2 properly.

234.   Journey Lite did not adequately supply all components required to use either Infuse/BMP-2 properly.

235.   Journey Lite knew or should have known the FDA requirements and Medtronic's requirements for using either Infuse/BMP-2.

236.  Journey Lite stored either Infuse/BMP-2 at its facility.

237.  Journey Lite ordered either Infuse/BMP-2 for surgery performed by Durrani.

238.  Journey Lite did not adequately warn Plaintiff that Infuse/BMP-2 would be used
without all FDA and manufacturer required components.

239.  Journey Lite did not gain informed consent from Plaintiff for the use of
Infuse/BMP-2, let alone warn of the supplying of the product without FDA and
manufacturer requirements.

240.  Journey Lite failed to supply either Infuse/BMP-2 (aka product) in the manner in
which it was represented.

241.  Journey Lite failed to provide any warning or instruction in regard to
Infuse/BMP-2, and failed to make sure any other party gave such warning or
instruction.

242.  Plaintiffs suffered physical, financial, and emotional harm due to Journey Lite's
violation of the Ohio Products Liability act. Plaintiff's injuries were a foreseeable risk

243.  Plaintiff did not alter, modify or change the product, nor did Plaintiff know that
the product was being implanted without all required components.

244.  Journey Lite knew or should have known that the product was extremely
dangerous and should have exercised care to provide a warning that the product was
being used and that the product was being used outside FDA and manufacturer
requirements. The harm caused to Plaintiff by not providing an adequate warning was
foreseeable.

245. Journey Lite knew that the product did not conform to the representation of the intended use by the manufacturer yet permitted the product to be implanted into Plaintiff.

246. Journey Lite, as a supplier, acted in an unconscionable manner in failing to supply the product without all FDA and manufacturer required components.

247. Journey Lite, as a supplier, acted in an unconscionable manner in failing to warn Plaintiffs that the product was being supplied without all FDA and manufacturer required components.

248. Journey Lite's actions demonstrate they took advantage of the Plaintiff's inability, due to ignorance of the product, to understand the product being implanted without FDA and manufacturer required components.

249. Journey Lite substantially benefited financially by the use of the product as the product allowed for Defendant to charge more for the surgery.

250. Plaintiff suffered economic loss as defined in R.C. § 2303.71(A)(2) and applicable law.

251. Plaintiff suffered mental and physical harm due to Journey Lite's acts and omissions.

252. Plaintiff suffered emotional distress due to acts and omissions of Journey Lite and are entitled to recovery as defined in R.C. § 2307.71(A)(7) and applicable law.

253. Journey Lite violated the Ohio Products Liability Act R.C. § 2307.71-2307.80

254. Journey Lite violated R.C. § 2307.71(A)(6).

255. Journey Lite violated The Ohio Consumer Sales Practices Act R.C. § 1345.02-.03.

256. Journey Lite provided inadequate warnings are defined in R.C, § 2307.76(A) and applicable law.

2014 05 1251

## COUNT VI: SPOLIATION OF EVIDENCE

BUTLER COUNTY
CLERK OF COURTS

257. Journey Lite through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, emails, paperwork and related evidence.

258. Journey Lite through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

259. Journey Lite's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests and seeks justice in the form and procedure of a jury, verdict and judgment against Defendants on all claims for the following damages:

1. Past medical bills;

2. Future medical bills;

3. Lost income and benefits;

4. Lost future income and benefits;

5. Loss of ability to earn income;

6. Past pain and suffering;

7. Future pain and suffering;

8. Plaintiff seeks a finding that Plaintiff's injuries are catastrophic under Ohio Rev. Code §2315.18;

9.      All damages permitted under Ohio Products Liability Act R.C. §2307.71-2307.80,

and all other applicable law'

10.     All incidental costs and expenses incurred as a result of Plaintiff's injuries;

11.     The damages to Plaintiff's credit as a result of Plaintiff's injuries;

12.     Punitive damages;

13.     Costs;

14.     Attorneys' fees;

15.     Interest;

16.     All property loss;

17.     All other relief to which Plaintiff is entitled including O.R.C. 1345.01

Based upon 1-17 itemization of damages, the damages sought exceed the minimum

jurisdictional amount of this Court and Plaintiff seeks in excess of $25,000.


                                        Respectfully Submitted,



                                        _Stephanie L. Collins (# 0089945)_
                                        *Attorney for Plaintiffs*
                                        5247 Madison Pike
                                        Independence, KY 41051
                                        Phone: 859-363-1900
                                        Fax: 859-363-1444
                                        scollins@ericdeters.com

## JURY DEMAND

Plaintiff makes a demand for a jury under all claims.

Stephanie L. Collins (#0089945)



FILED

2014 MAY -9 AM 1: 49

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

CV

CLERK OF COURTS 25 1251

BUTLER COUNTY
CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:

West Chester Hospital, LLC
G, H & R Business Svcs, Inc.
511 Walnut Street                    ZIP
1900 5/3 Center
Cincinnati, Ohio 45202

Today's Date: _5/9/14_

Plaintiff: _Holly Jo Raifenberger_    -VS-    Defendant: _Abubakar Atiq Durrani_

Case No.: _____

PRECIPE FOR SERVICE
COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

☐ Ordinary Mail                    ☐ Personal Service by Butler County Sheriff
☑ Certified Mail                   ☐ Foreign County Sheriff
☐ Appointed Process Server         ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

Complaint with Jury Demand
Motion for Extension of Time to File
Affidavit of Merit
Interrogatories & Request for Production
of Documents to all Defendants

REQUESTING ATTORNEY:
Stephanie Collins
5247 Madison Pike                    ZIP
Independence, Ky. 41051

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

FILED

2014 MAY -9 PM 1:49

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS



2014 05 1251

CLERK OF COURTS
BUTLER COUNTY
CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:

UC Health
Serve: G, H & R Business, Svcs, Inc.
511 Walnut Street
1900 5/3 Center
Cincinnati, Ohio 45202

ZIP _____

Today's Date: *5/9/14*            Case No.: _____

Plaintiff: *Holly Jo Reifenberger* -VS-   Defendant: *Abubakar Atiq Durrani*

PRECIPE FOR SERVICE
COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

☐ Ordinary Mail              ☐ Personal Service by Butler County Sheriff
☑ Certified Mail             ☐ Foreign County Sheriff
☐ Appointed Process Server   ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

**Complaint with Jury Demand**
**Motion for Extension of Time to File**
**Affidavit of Merit**
**Interrogatories & Request for Production**
**of Documents to all Defendants**

REQUESTING ATTORNEY:
**Stephanie Collins**
**5247 Madison Pike**                    ZIP_____
**Independence, Ky. 41051**

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

FILED



2014 MAY -9 PM 1: ___
MARY L. SWAIN

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

CLERK OF COURTS 2014 05 1251

BUTLER COUNTY
CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:

**Journey Lite of Cincinnati, LLC**
**Serve: CT Corporation System**
**1300 East 9ᵗʰ Street**
**Cleveland, Ohio 44114**

ZIP ___

Today's Date: 5/9/14           Case No.: ___
Plaintiff: Holly Jo Reifenberger -VS- Defendant: Abubakar Atiq Durrani

PRECIPE FOR SERVICE
COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ☐ Ordinary Mail
- ☑ Certified Mail
- ☐ Appointed Process Server
- ☐ Personal Service by Butler County Sheriff
- ☐ Foreign County Sheriff
- ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

**Complaint with Jury Demand**
**Motion for Extension of Time to File**
**Affidavit of Merit**
**Interrogatories & Request for Production**
**of Documents to all Defendants**

REQUESTING ATTORNEY:

**Stephanie Collins**
**5247 Madison Pike**
**Independence, Ky. 41051**

ZIP ___

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org